**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD SHOOK** and **KAREN A. SHOOK**, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:07cv1123 **Electronic Filing** |
| **AVAYA INC.**, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

September 16, 2009

**I.   INTRODUCTION**

Plaintiffs, Richard Shook ("Shook") and Karen A. Shook ("Karen")(collectively "Plaintiffs") filed this action against Defendant, Avaya, Inc. ("Avaya") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging a breach of fiduciary duty pursuant to 29 U.S.C. §§ 1132 and 1109[1]. The parties have filed cross- motions for summary judgment, responses have been filed and the motions are now before the Court.

**II.   STATEMENT OF THE CASE**

Avaya is the sponsor and administrator of the Avaya, Inc. Pension Plan (the "Plan"). Plaintiffs' Statement of Undisputed Material Facts ("Pl. SUMF") ¶ 1. Shook is a former employee of Avaya, and a participant in the Plan. *Id.* ¶ 3. Shook was employed by Western Electric, a subsidiary of AT&T, Inc., from January 8, 1974, until February 26, 1982. During that time, Shook was a member of the Communications Workers of America Union (the "CWA"). *Id.* ¶ 5. Shook was employed by Octel Communications ("Octel") as a field service engineer from December 19, 1988 until August 31, 1998. *Id.* ¶ 6. Octel was purchased by Lucent

---

[1]   Plaintiffs also included a state claim based upon promissory estoppel, which was dismissed upon motion as preempted by ERISA.

Technologies ("Lucent") in 1997.  *Id.*  ¶ 7.  From September 1, 1998 until he was laid off in October of 2005, Shook was employed by Lucent and Avaya[2].  *Id.*  ¶ 9.  During this time, Shook was a member of the CWA. *Id.*  ¶ 8.

In September of 1998, Lucent entered into a Memorandum of Understanding with the CWA and the International Brotherhood of Electrical Workers (the "IBEW") which in relevant part stated: "[p]rior Octel service will count for eligibility toward vacation and sickness disability absence . . . [p]rior Octel shall count toward **eligibility** under the Pension Plan.  **For pension calculation purposes**, a [Technical Assistance Coordinator or Field Service Coordinator]'s pension service date **shall be no earlier than September 1, 1998**." Administrative Record ("AR") p. 0286;  Pl. SUMF ¶ 11 (Emphasis Added).  By correspondence dated October 18, 1999, Shook was advised: "Since Octel is not a participant in the Lucent Technologies, Inc. Management Pension Plan . . . , your service will not be included in your Net Credited Service [NCS][3] date.  Accordingly, your [NCS] date will be 9/1/98." Pl. SUMF  ¶ 13.

After filing a grievance, Shook received a letter from the Pension Service Center dated April 7, 2000,  that stated in relevant part: ". . . **for eligibility for vacation and for benefits under the [Lucent] Sickness and Accident Disability Benefit Plan** . . . [in accordance with the] Memorandum of Understanding entered between Lucent and the CWA  . . . it has been determined that your [Recognition of Prior Service] date will be effective retroactive to September 29, 1999. . .  Your supervisor will need [this] information to **determine your eligibility for vacation and benefits under the Lucent Technologies Inc. Sickness and Accident Disability Plan**." AR p. 0237; Pl. SUMF  ¶ 14 (Emphasis Added).  On November 21,

---

[2]   Avaya was the former business communications unit of Lucent and became an independent company in 2000.  Complaint ¶ 8.

[3]   The NCS date is referenced in context for many benefits including sickness death benefits, sickness disability benefits, military differential pay, transition leave of absence, termination payments, pension and seniority. Collective Bargaining Agreement pp. 7, 8, 54-55, 58, 62-63, 407.

2000, Shook received a letter the Pension Service Center that indicated his adjusted NCS date was 10/30/1980, for "eligibility for disability benefits and vacation." Pl. SUMF ¶ 15.

Based upon the November 21st letter, Shook met with his union representative to discuss possible layoffs at Avaya, and that, based on the NCS date of 10/30/80, Shook would be able to retire in November of 2005 with twenty-five (25) years of credited service, the requisite needed to receive a full pension. *Id.* ¶ 16. Shook contends that he and his wife used the November 21st letter as a basis for deciding that Karen should retire in November of 2003. Shook, however, did not request an estimate of his pension benefits prior to Karen's retirement. Shook Dep. pp. 36-37. Instead, Shook talked to co-workers and did his own calculations regarding his estimated pension benefits. Shook Dep. p. 37.

Shook did not request a Pension Plan Worksheet until December of 2004 when he learned he was going to be laid off. *Id.* ¶ 17. The worksheet he received from the Plan Administrator confirmed Shook's understanding that his NCS date was October 30, 1980, and as a result, his pension benefit would be $1,469.25. *Id.* The worksheet, entitled "About Your Benefit From the Pension Plan," was based on benefit service of twenty-four (24) years and four (4) months, and contained a clear disclaimer that the Avaya Plan controls in the event of any inconsistency between the pension benefit calculation and the Plan provisions. Pl. SUMF ¶ 18; Plaintiffs' Complaint Ex. D. Avaya discovered that the December 14th pension benefit calculation had incorrectly included Shook's Octel service, and thirteen (13) days later, sent Shook a revised pension benefit calculation. Pl. SUMF ¶ 18. The revised Pension Plan Worksheet, dated December 27, 2004, listed Shook's benefit service as fourteen (14) years and seven (7) months and a monthly benefit of $880.54. Pl. SUMF ¶ 18; Administrative Record ("AR") pp. 0259-0260.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no

genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56©,  its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.    DISCUSSION**

Plaintiffs do not seek to overturn the administrator's interpretation of the Plan. In fact,

4

Plaintiffs agree that the "Administrator's interpretation of the Plan, in general, and Octel service credits, in particular are correct." Instead, Plaintiffs are arguing that Avaya breached its fiduciary duty under ERISA by providing incorrect pension calculations to Plaintiffs, and that Plaintiffs relied upon such calculations to their detriment when making retirement decisions.

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The fiduciary may not, in the performance of these duties, "materially mislead those to whom the duties of loyalty and prudence are owed." *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1261 (3d Cir. 1995). *See also Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 238 (3d Cir. 1994); *Bixler v. Central Pa. Teamsters Health and Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1994); *Fischer v. Phila. Elec. Co.*, 994 F.2d 130 (3d Cir. 1993). A plan administrator acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees. *See Unisys*, 57 F.3d 1255 at 1261 n.10

In order to make out a breach of fiduciary duty claim, Plaintiffs must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001). Avaya argues, *inter alia*, that Plaintiffs breach of fiduciary claim fails because they cannot show either a material misrepresentation by Avaya prior to Karen's retirement in 2003 or detrimental reliance upon the erroneous pension calculation dated December 14, 2004. The Court agrees, and for the reasons set forth below, the Court finds: (1) there were no misrepresentations made to Shook regarding his pension benefit calculation prior to December 14, 2004; (2) if in fact there was a misrepresentation regarding Shook's NCS date, it was not material to Karen's retirement; and (3) the erroneous pension benefit calculation dated December 14, 2004, was not material, nor was it detrimentally relied upon by Shook. Therefore, Plaintiffs' motion for summary judgment will be denied and Avaya's motion for

summary judgment will be granted[4].

    A.    <u>Material Misrepresentation</u>

In *Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000), the Third Circuit explained that a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making a decision regarding his benefits under the ERISA plan. *Adams v. Freedom Forge Corp.*, 204 F.3d at 492. "[A]ny provision of a plan subject to ERISA that establishes a benefit is a material term of the plan." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir. 1994). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993). In this instance, Shook was not making a decision regarding "his benefits" under the Plan at the time relevant to the alleged material misrepresentations regarding his Net Credit Service date. Instead, Shook complains that he and Karen relied on Avaya's misrepresentations regarding his Octel time and its affect on his Net Credit Service date in deciding whether **Karen** should retire in November of 2003. Karen, however, was not an employee of Avaya, nor a participant in the Plan.

The Third Circuit has previously concluded that representations were material where they led an employee to wrongly believe that accidental death and dismemberment insurance was available. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d at 236-37. The court also determined that representations could be material where an employer stated that no early retirement incentives were on the horizon, when in fact management was considering such a program. *Fischer v. Phila. Elec. Co.*, 994 F.2d at 134-135. This Court is loath to expand materiality to include a representation allegedly relied upon in making a reasoned determination if and when a non-employee should retire. There is simply no support under the law the for such

---

[4] Because this Court finds Plaintiffs' breach of fiduciary duty fails, it need not address Avaya's contentions that Karen Shook lacks standing or its arguments regarding the National Labor Relations Act and monetary damages.

an expansion.

Moreover, this Court can find no affirmative misrepresentation in the correspondence prior to Karen's retirement in November of 2003. The Memorandum of Understanding entered into by Lucent and the CWA and IBEW, and the letters to Shook dated October 18, 1999, April 7, 2000, and November 21, 2000, are consistent regarding his Octel service. Each indicates that for the purpose of vacation and disability/sick benefits, Shook's Octel service was counted and for such benefits his NCS date was October 30, 1980. None of the documents indicated that such date was to be used for his pension calculation. To the contrary, the correspondence dated October 18, 1999, advised Shook that: "Since Octel is not a participant in the Lucent Technologies, Inc. Management Pension Plan . . . , your service will not be included in your Net Credited Service [NCS] date. Accordingly, your [NCS] date will be 9/1/98." This was absolutely consistent with the Memorandum of Understanding which stated: "[p]rior Octel shall count toward **eligibility** under the Pension Plan. **For pension calculation purposes**, a [Technical Assistance Coordinator or Field Service Coordinator]'s pension service date **shall be no earlier than September 1, 1998**." Moreover, each correspondence that gave Shook his NCS date as something other than September 1, 1998, expressly indicated that it was for the determination of vacation and sick/disability benefits.

The Court is unable to find that the statements allegedly relied upon by Shook prior to November 2003, were affirmative misrepresentations. "Summary judgment on the 'question of materiality' is appropriate only if 'reasonable minds cannot differ.'" *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). This Court finds that reasonable minds would be unable to find that the pre-November 2003 correspondence allegedly relied upon by Plaintiffs to their detriment was either a misrepresentation or was material to Shook's decision about if and when **he** should retire.

Further, the erroneous pension benefit calculation dated December 14, 2004, was hardly a material misrepresentation by Avaya, nor was it relied upon by Shook in his decision to retire. A

mistake in calculating pension benefits does not constitute willful misconduct or bad faith sufficient to support a breach of fiduciary duty claim. *See Gramm v. Bell Atlantic Mgt.*, 983 F. Supp. 585, 593 (D.N.J. 1997); *see also Burke v. Latrobe Steel Co.*, 775 F.2d 88, 91 (3d Cir. 1985) ("Trustees do not breach their fiduciary duties by interpreting the [benefits] plan in good faith, even if their interpretation is later determined to be incorrect."). Moreover, Avaya quickly corrected the error and on December 27, 2004, sent Shook a revised pension calculation that properly excluded his Octel time in calculating his pension benefit.

Shook admitted that he took no action based upon the December 14, 2004, calculation. Shook Dep. p. 29. There is no evidence in the record, therefore, that Shook relied to his detriment on the incorrect pension calculation between December 14, 2004, and December 27, 2004. The only alleged act of detrimental reliance was Karen's resulting retirement in 2003, long before Avaya made the erroneous calculation. Accordingly, there is no evidence of record that Plaintiffs' detrimentally relied upon the December 14, 2004, pension benefit calculation. Plaintiffs' breach of fiduciary duty claim, therefore, shall be dismissed.[5]

Plaintiffs also suggest that this Court should have interpreted their promissory estoppel claim in the Complaint as a claim under a theory of equitable estoppel under ERISA. A beneficiary may "obtain . . . appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provisions of [ERISA]." 29 U.S.C. § 1132(a)(3). A beneficiary can make out a claim for "appropriate equitable relief, *id.*, based on a theory of equitable estoppel. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d at 235. In order to succeed under a theory of equitable estoppel, however, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances. *Id.*

Using the same analysis above on the theory of Equitable estoppel, the Court finds the same failures in Plaintiffs' case. Avaya made no material misrepresentations prior to Karen's

---

[5] The Court finds Plaintiffs' reliance upon *Pell v. E. I. DuPont De Nemours & Co.*, 539 F.3d 292 (3d Cir. 2008) in their supplemental brief is misplaced with respect to the issues of materiality and detrimental reliance in this case.

retirement in November of 2003, and Shook did not detrimentally rely upon the erroneous pension calculation dated December 14, 2004. Therefore, a claim for equitable estoppel under ERISA would fail in any event.

### V.   CONCLUSION

Based on the foregoing, the Court will deny Plaintiff's motion for summary judgment and grant the motion for summary judgment in favor of Avaya on Plaintiff's claim for breach of fiduciary duty pursuant to 29 U.S.C. §§ 1132 and 1109.  An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:   Douglas B. McKechnie, Esquire
Michael J. Healey, Esquire
Healey & Hornack
1100 Liberty Avenue
Suite C-2
The Pennsylvanian
Pittsburgh, PA 15222

Michael J. Newman, Esquire
Charles M. Roesch, Esquire
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202